1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   DONALD G. ROBERTSON, and
    COLLEEN F. ROBERTSON, husband        NO:  2:14-CV-117-RMP
8   and wife and the marital community
    comprised thereof,                   ORDER GRANTING MOTION FOR
9                                         SUMMARY JUDGMENT
                        Plaintiffs,
10          v.

11  FERRY COUNTY, a municipal
    corporation; FERRY COUNTY
12  SHERIFF'S DEPARTMENT; a
    municipal corporation; PETE
13  WARNER, Sheriff; TALON
    VENTURO, Deputy; and JOHN
14  DOES, Deputies,

15                      Defendants.

16

17       Before the Court is Defendants' Motion for Summary Judgment, ECF No.

18  10.  The Court has reviewed the record and is fully informed.

19                          BACKGROUND

20       Plaintiffs Donald Robertson and Colleen Robertson filed this action in

21  regard to a search of their home that was conducted by officers of the Ferry County

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 1

1    Sheriff's Department.  ECF No. 1, Ex. 2.  On or about December 9, 2011, A.H., an

2    eleven year-old child, was taken by his father to the Ferry County Sheriff's Office.

3    *See* ECF No. 12, Ex. G.  A.H. reported to Deputy Talon Venturo that his mother,

4    Colleen Robertson, was growing marijuana in her bedroom.  ECF No. 12, Ex. B at

5    4.  A.H. provided details about the plants, including that they "smelled like a

6    skunk[,]" were grown together in a 3 foot by 4 foot area, and were under a grow

7    light.  ECF No. 12, Ex. B at 4.  Deputy Venturo drew a picture of a marijuana leaf,

8    which A.H. confirmed to be the same type of leaf that was on the plants in his

9    mother's bedroom.  ECF No. 12, Ex. B at 4.  Deputy Venturo also showed A.H.

10    pictures of marijuana plants on his computer, which A.H. recognized as the same

11    kind of plants that his mother grew.  ECF No. 12, Ex. B at 4.

12         Deputy Venturo used A.H.'s statement in support of a search warrant

13    application, which was granted.  ECF No. 12, Exs. A, B.  Deputy John Lofts, who

14    was wearing a body camera, executed the search warrant with other officers on the

15    evening of December 9, 2011.  *See* ECF No. 12, Exs. D at 2; F (copy of video

16    recording).

17         Colleen Robertson opened the door for the officers.  ECF No. 12, Ex. C at 1.

18    Deputy Lofts frisked both Donald and Colleen Robertson.  ECF No. 12, Ex. D at 2.

19    In a declaration filed in opposition to the motion for summary judgment, Mr.

20    Robertson states that he observed the deputy "lift [his] wife's shirt, and reach

21    underneath each breast, touching both."  ECF No. 16 at 3.  Colleen Robertson

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 2

1    stated at a deposition that during the search the officer smacked her knee three

2    times, knocking her halfway down.  ECF No. 12, Ex. C at 14.  She further stated

3    that after she told the officer that she had no clothing on beneath her shirt, he lifted

4    her shirt above her head in front of the other officers.  ECF No. 12, Ex. C. at 14.

5    The officer allegedly also put his hands in Colleen Robertson's pants.  ECF No. 12,

6    Ex. C at 14.

7          Deputy Lofts denies that he lifted Colleen Robertson's shirt, put his hand

8    into her pants, or hit her knee.  ECF No. 12, Ex. D at 3.  The recording from

9    Deputy Lofts's body camera records Deputy Lofts saying "back of the hand" while

10   searching Colleen Robertson.  ECF No. 12, Ex. F.  Deputy Lofts explains that he

11   was trained to use the back of his hand to run across and underneath a woman's

12   chest during a weapons frisk because it is non-invasive.  ECF No. 12, Ex. D at 2-3.

13         Deputy Venturo's report of the search reflects that officers located marijuana

14   smoking devices, marijuana seeds, and a plastic bag containing marijuana in the

15   Robertson residence, but no marijuana plants.  ECF No. 15, Ex. A at 2.  Colleen

16   Robertson showed Deputy Venturo her medical marijuana authorization, which

17   had expired.  ECF No. 15, Ex. A at 2.  Deputy Venturo seized the paraphernalia,

18   seeds, marijuana, and a copy of the expired medical marijuana authorization.  ECF

19   No. 15, Ex. A at 2.

20         Criminal proceedings were initiated, but the Ferry County District Court

21   suppressed the evidence found in the search and terminated the prosecution.  *See*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 3

1    ECF No. 15, Ex. B.  Among other concerns, the judge who suppressed the

2    evidence concluded that "Deputy Venturo's drawing and the computer image(s)

3    were impermissibly suggestive under the facts and circumstances."  ECF No. 15,

4    Ex. B at 2.

5        A.H. gave his statement, and the Robertsons' house was searched, one week

6    before the date of a hearing regarding the custody of A.H.  ECF No. 12, Ex. C at 2.

7    In January 2012, A.H. apparently recanted his prior statement regarding marijuana

8    plants.  *See* ECF No. 12, Ex. G.  In the later statement, A.H. explained that his

9    father took him to the police station on December 9, 2011, but that A.H. did not

10   want to go.  ECF No. 12, Ex. G.  A.H. further stated that Deputy Venturo gave him

11   a piece of paper (presumably the form on which A.H.'s handwritten statement is

12   recorded), which A.H.'s father told A.H. how to fill out.  *See* ECF No. 12, Ex. G.

13       Donald Robertson explains in his declaration that the Ferry County Sheriff's

14   Department and Judge Tom Brown, who signed the search warrant, were familiar

15   with the contentious relationship between Colleen Robertson and A.H.'s father

16   before A.H. reported that his mother grew marijuana.  *See* ECF No. 16 at 2.  In

17   2010, Donald Robertson told Sheriff Pete Warner that A.H.'s father had been

18   abusing one of Colleen Robertson's daughters.  ECF No. 16 at 2.  Sheriff Warner

19   directed Donald Robertson to report the abuse to Tom Brown, who was the

20   prosecuting attorney at the time.  ECF No. 16 at 2.  Donald Robertson relayed to

21   Tom Brown the allegations against A.H.'s father.  *See* ECF No. 16 at 2.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 4

The Robertsons brought this action in Ferry County Superior Court, alleging that the search of their home and sexual assault of Colleen Robertson violated federal and state constitutional protections.  ECF No. 1, Ex. 2.  Defendants removed the case to this Court, ECF No. 1, and now seek summary judgment, ECF No. 10.

## ANALYSIS

According to Defendants, there is no evidence indicating that Sheriff Warner was involved in the alleged misconduct or that municipal liability is appropriate.  ECF No. 10.  Defendants also assert that the Robertsons' challenge to the constitutionality of the search of their home lacks merit because the officers lawfully obtained a warrant and because courts do not recognize lawsuits for money pursuant to the Washington Constitution.  Finally, Defendants claim that the Robertsons fabricated the entire story about sexual assault.

*Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The party asserting the existence of an issue of material fact must show "'sufficient evidence supporting the claimed factual dispute . . . to require a jury or

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 5

judge to resolve the parties' differing versions of the truth at trial.'" *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). In deciding a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31.

   *1. Liability of Sheriff Warner and Municipalities*

   Defendants claim that there is no evidence to establish that Sheriff Warner was involved in the incident or that the municipality defendants, Ferry County and the Ferry County Sheriff's Department, may be held liable. ECF No. 10 at 7. The Robertsons did not respond directly to this argument, other than providing general statements from Donald Robertson, including that "Sheriff Warner and his deputies knew, or should have known, that any information coming from [Colleen Robertson's] minor children could be flawed" and that he "believe[s] Deputy Venturo and the Ferry County Sheriff's Department used A.H.'s statement in support of their search warrant . . . in order to adversely affect Colleen's custody rights." *See* ECF No. 16 at 2-3.

The Robertsons have failed to demonstrate a genuine issue of material fact regarding Sheriff Warner's liability in this matter. There is no evidence that Sheriff Warner was involved in interviewing A.H., applying for the search warrant, or conducting the search. Moreover, because Sheriff Warner did not question A.H., it is irrelevant that Donald Robertson contends that the sheriff should have suspected the veracity of A.H.'s statements. Sheriff Warner is entitled to summary judgment in his favor.

Turning to Ferry County and the Ferry County Sheriff's Department, municipalities are included as "persons" to whom 42 U.S.C. § 1983 applies and thus they may be held liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, the doctrine of respondeat superior does not apply to § 1983 claims against municipalities. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citing *Monell*, 436 U.S. at 691).

Instead, a plaintiff may establish municipal liability for a § 1983 claim by satisfying one of three conditions:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff

may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and internal quotations omitted).

The Robertsons have not provided any evidence indicating that the alleged constitutional violations were made pursuant to a longstanding practice, that an official with policy-making authority committed the acts, or that the unconstitutional actions were ratified by someone with policy-making authority. Summary judgment is appropriate in the municipalities' favor.

*2. Search of Residence*

Defendants argue that the Robertsons' challenge to the search of their residence lacks merit because the officers obtained a lawful warrant to search the home. ECF No. 10 at 4-6.

The Robertsons argue that the search violated their rights under the federal constitution because the warrant lacked probable cause. ECF No. 14 at 3-7. Furthermore, the Robertsons claim that the search of the house was improper because of Washington State's regulation of medical marijuana. ECF No. 14 at 7-8. The Robertsons also contend that the search violated the Washington State Constitution. ECF No. 14 at 9-11.

*a. Fourth Amendment*

Looking first to the claim under the federal constitution, the Robertsons contend that the search warrant was obtained in violation of the Fourth

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 8

1   Amendment's probable cause requirement because the Ferry County Sheriff's

2   Department withheld relevant information from the magistrate who issued the

3   warrant.  *See* ECF No. 14 at 3-5.  In particular, the Robertsons contend that "the

4   Ferry County Sheriff's Department knew, and should have known, that there was a

5   significant child custody dispute going between Plaintiff Colleen Robertson and

6   [A.H.'s father]."  ECF No. 14 at 3.  In addition, Deputy Venturo allegedly

7   encouraged A.H. to exaggerate the incriminating information that he provided

8   about his mother.  ECF No. 14 at 3.

9       The doctrine of qualified immunity protects government officials, including

10  police officers, from liability when their conduct "does not violate clearly

11  established statutory or constitutional rights of which a reasonable person would

12  have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified

13  immunity is "an immunity from suit rather than a mere defense to liability" and is

14  "effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v.*

15  *Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted).  Thus, courts must resolve

16  questions of qualified immunity "at the earliest possible stage in litigation."

17  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

18      A police officer is entitled to qualified immunity in a § 1983 action unless

19  (1) the facts, when taken in the light most favorable to the plaintiff, show that the

20  officer's conduct violated a constitutional right; and (2) the right was clearly

21  established at the time of the alleged misconduct.  *Saucier v. Katz*, 533 U.S. 194,

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 9

201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  When a police officer submits a search warrant affidavit that he knew to be false or should have known to be false, and probable cause would not have existed without the false statements, then the officer "'cannot be said to have acted in an objectively reasonable manner,' and the shield of qualified immunity is lost." *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991) (quoting *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985)), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002).

To survive summary judgment on a claim of judicial deception, a plaintiff must (1) make "a substantial showing of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred." *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (per curiam) (internal quotations and citations omitted); *see also KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) (stating that "a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause").  If the plaintiff satisfies these

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 10

1    requirements, then "the matter should go to trial."  *Butler*, 281 F.3d at 1024

2    (quoting *Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997)).

3         Here, the Court considers whether the Robertsons made a substantial

4    showing that Deputy Venturo's actions constituted deliberate falsehood or reckless

5    disregard for the truth.

6         The Robertsons contend that the Ferry County Sheriff's Department knew,

7    or should have known, of the child custody dispute between Colleen Robertson and

8    A.H.'s father, implying that the information was deliberately or recklessly omitted

9    from the warrant application.  *See* ECF No. 14 at 3-4.  However, the Robertsons

10   provide evidence showing only that Sheriff Warner and Judge Tom Brown knew

11   of the contentious relationship between Colleen Robertson and A.H.'s father.  *See*

12   ECF No. 16 at 2.  Although Donald Robertson suspects that "[Sheriff Warner's]

13   deputies knew, or should have known, that any information coming from [Colleen

14   Robertson's] minor children could be flawed as a result of improper coaching by

15   their father[,]" there is no evidence that Deputy Venturo, who applied for the

16   warrant, had any prior knowledge of Colleen Robertson or A.H.'s father.  *See* ECF

17   No. 16 at 3.

18        Moreover, despite the Robertsons' contention that Deputy Venturo

19   encouraged A.H. to exaggerate his report, the Robertsons have produced no

20   evidence indicating that Deputy Venturo omitted any facts from the warrant

21   affidavit.  Counsel for the Robertsons apparently relies on Deputy Venturo's report

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 11

1   to demonstrate that the deputy's "questions to the minor child during the initial

2   interview were leading and clearly produced incorrect information." *See* ECF No.

3   15 at 2.  The only activity that could be characterized as "leading" is that Deputy

4   Venturo asked A.H. to compare the appearance of his mother's plants to a picture

5   of a marijuana leaf that the deputy drew and to pictures of marijuana plants on the

6   deputy's computer.  *See* ECF No. 15, Ex. A at 2.  However, these actions as

7   described in Deputy Venturo's report also are reflected verbatim in the warrant

8   affidavit.  *Compare* ECF No. 15, Ex. A at 2 *with* ECF No. 12, Ex. B at 4.

9        Thus, the Robertsons have not made a substantial showing that information

10  was omitted from the warrant affidavit deliberately or with reckless disregard for

11  the truth.  Because the Court finds that the Robertsons have not demonstrated that

12  information was omitted, the Court does not consider whether the allegedly

13  missing information would have affected the magistrate's decision to issue the

14  search warrant.

15       To the extent that the Robertsons argue that Defendants are liable under the

16  federal constitution because the warrant, as issued, lacked probable cause, the

17  Court finds that Defendants are protected by qualified immunity.  "Where the

18  alleged Fourth Amendment violation involves a search or seizure pursuant to a

19  warrant, the fact that a neutral magistrate has issued a warrant is the clearest

20  indication that the officers acted in an objectively reasonable manner or, as [the

21  Supreme Court has] sometimes put it, in 'objective good faith.'" *Messerschmidt v.*

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 12

1    *Millender*, 132 S. Ct. 1235, 1245 (2012) (quoting *United States v. Leon*, 468 U.S.

2    897, 922-923 (1984)).  An exception exists, however, "if, on an objective basis, it

3    is obvious that no reasonably competent officer would have concluded that a

4    warrant should issue . . . ."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

5         Here, in light of A.H.'s statements about the smell and appearance of his

6    mother's marijuana plants, the Court cannot conclude that no reasonably

7    competent officer would find that probable cause existed to support a search

8    warrant.  Defendants are entitled to summary judgment on this theory as well.

9         *b. Washington's Regulation of Medical Marijuana*

10        The Robertsons claim that the search of their residence was improper also

11   because they were authorized to have medical marijuana.  ECF No. 14 at 7-8.  As

12   stated above, Colleen Robertson presented Deputy Venturo an expired medical

13   marijuana authorization.  ECF No. 15, Ex. A at 2.

14        Washington law provides that the medical use of marijuana in compliance

15   with the law:

16            does not constitute a crime and a qualifying patient or designated
             provider in compliance with the terms and conditions of this chapter
17            may not be arrested, prosecuted, or subject to other criminal sanctions
             or civil consequences, for possession, manufacture, or delivery of, or
18            for possession with intent to manufacture or deliver, cannabis under
             state law, or have real or personal property seized or forfeited for
19            possession, manufacture, or delivery of, or for possession with intent
             to manufacture or deliver, cannabis under state law, [if specified
20            conditions are met.]

21

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 13

RCW 69.51A.040.  Among the conditions to avoid criminal liability is that "[t]he qualifying patient or designated provider presents his or her proof of registration with the department of health, to any peace officer who questions the patient or provider regarding his or her medical use of cannabis . . . ."  RCW 65.51A.040(2).  A qualifying patient who is not registered with the department of health may be entitled to "an affirmative defense to charges of violations of state law relating to cannabis through proof at trial, by a preponderance of the evidence, that he or she otherwise meets the requirements of RCW 69.51A.040."  RCW 69.51A.043(2).

In a recent case, the Washington Supreme Court explained that chapter 69.51A RCW provides only an affirmative defense for medical marijuana users and does not decriminalize any conduct.  *State v. Reis*, No. 90281-0, 2015 WL 2145986, at *8 (Wash. May 7, 2015).  The text of RCW 69.51A.040 appears to create an exception to criminal liability for patients who, among other conditions, register with the state.  However, after the Department of Justice indicated that administering a medical marijuana registry could result in liability under the Controlled Substances Act, Washington's governor vetoed provisions of the bill that would have created the registry.  *Id.* at *4.  Thus, no state registry currently exists, and medical marijuana patients have only an affirmative defense to prosecution.  *Id.* at *4, 10.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 14

Here, because Washington's medical marijuana law provides only the protection of an affirmative defense, the Robertsons' reliance on statutory language regarding decriminalization is misplaced. "[T]he possibility of proving the affirmative defense does not undermine probable cause for a search warrant." *Id.* at *10 (citing *State v. Fry*, 168 Wn.2d 1, 6 (2010)). Thus, the Robertsons have failed to establish that a genuine issue of material fact exists as to Colleen Robertson's medical marijuana authorization.

### c. State Constitutional Claims

The Robertsons also contend that Defendants violated their right to privacy pursuant to the Washington State Constitution. ECF No. 14 at 9-11. Article I, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Wash. Const. art I, § 7. This privacy protection is broader than that of the Fourth Amendment. *State v. Ladson*, 138 Wn. 2d 343, 348-49 (1999).

However, "Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations 'without the aid of augmentative legislation . . . .'" *Blinka v. Washington State Bar Ass'n*, 109 Wn. App. 575, 591 (2001) (quoting *Sys. Amusement, Inc. v. State*, 7 Wn. App. 516, 517 (1972)). The Court is aware of no legislation authorizing causes of action based on violations of the Washington State Constitution.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 15

1    Accordingly, Defendants are entitled to summary judgment on the Robertsons'

2    claims under the state constitution.

3        *3. Sexual Assault*

4        Defendants challenge the alleged sexual assault solely on a factual basis,

5    claiming that the Robertsons fabricated the incident.  *See* ECF No. 10 at 8-10.

6    Defendants offer Deputy Lofts's body camera recording of the search, which

7    shows that Deputy Lofts's search of Colleen Robertson lasted approximately 25

8    seconds.  *See* ECF No. 12, Ex. F.  However, the video is dark, and Colleen

9    Robertson's body rarely is captured in the recording of the search.  In response to

10   the motion for summary judgment, Donald Robertson provides some details of his

11   wife's sexual assault that are consistent with Colleen Robertson's deposition

12   statements.  *Compare* ECF No. 16 at 3 *with* ECF No. 12, Ex. C at 14.  Viewing the

13   evidence in the light most favorable to the Robertsons, the Court cannot conclude

14   whether and to what extent Colleen Robertson was assaulted.

15       However, Deputy Lofts, who allegedly committed the assault according to

16   the evidence submitted by the Robertsons, is not a party to this action.  Rather,

17   Deputy Lofts may be among the "John Doe" deputies listed as defendants in the

18   Complaint.  *See* ECF No. 1, Ex. 2 at 3.

19       Generally, the use of John Doe defendants is not favored in the Ninth

20   Circuit.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  In situations

21   where a plaintiff does not know the identity of a defendant before filing his or her

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 16

1    complaint, "the plaintiff should be given an opportunity through discovery to

2    identify the unknown defendants, unless it is clear that discovery would not

3    uncover the identities, or that the complaint would be dismissed on other grounds."

4    *Id.*

5        Here, the Robertsons were given ample time to discover Deputy Lofts's

6    identity but nonetheless failed to amend their Complaint to add him as a defendant.

7    According to the Jury Trial Scheduling Order, entered on July 31, 2014, any

8    motion to add parties was due by September 11, 2014.  ECF No. 8 at 3.  The

9    Robertsons had a sufficient opportunity to discover the identity of Deputy Lofts,

10   who played a key role in their allegations.

11       Because Deputy Lofts was not added as a party and there is no evidence

12   submitted against any person other than Deputy Lofts, Defendants are entitled to

13   summary judgment on this claim as well.

14                          CONCLUSION

15       In sum, there are no genuine issues of material fact regarding the

16   Robertsons' claims against Sheriff Warner, Ferry County, or the Ferry County

17   Sheriff's Department.  The Robertsons' constitutional claims regarding the

18   issuance of a search warrant and search of their residence also do not survive

19   summary judgment.  Defendants also are entitled to summary judgment on the

20   Robertson's claim of sexual assault.

21

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 10**, is **GRANTED**.

2. The Robertsons' Motion for Extension of Time, **ECF No. 21**, is **DENIED AS MOOT**.

The District Court Clerk is directed to enter this Order, provide copies to counsel, enter judgment accordingly, and **close** this case.

**DATED** this 8th day of June 2015.


_____ *s/ Rosanna Malouf Peterson* _____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ~ 18